```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

CLAYTON SMITH, ET AL.           §
                                §
v.                              §   CIVIL ACTION NO. 4:09-CV-658-Y
                                §
TARRANT COUNTY                  §
COLLEGE DISTRICT, ET AL.        §
```

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Clayton Smith and John Schwertz Jr. are students at the Hurst, Texas, campus of defendant Tarrant County College District ("TCC"). Also named as a defendant is Erma Johnson Hadley, TCC's interim chancellor. The controversy in this case arises from the desire of Smith and Schwertz to protest Texas law and TCC policy prohibiting students from carrying concealed weapons on campus by, inter alia, wearing empty handgun holsters on campus, including into classrooms. The desired protest is said to be part of a demonstration to take place on college campuses across the country the week of November 9, 2009. Along with wearing empty holsters, Smith and Schwertz's protest will involve their wearing t-shirts depicting empty holsters and handing out pamphlets. According to Smith and Schwertz, a previous attempt at wearing empty holsters to protest concealed-handgun regulations was also forbidden by TCC.

TCC regulates student demonstrations through a permit system. That is, before engaging in protest or demonstration activities on campus, students must apply for a permit which, if issued, allows speech activities to take place in designated free-speech zones, one of which exists on each TCC campus. A student must apply for a permit

at least twenty-four hours in advance of the proposed demonstration. According to Smith and Schwertz, TCC has no guidelines governing the issuance of permits.

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. Paragraph (a) of that rule provides that a "court may issue a preliminary injunction only on notice to the adverse party" and paragraph (b) allows the issuance of a temporary restraining order **without** notice only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(a) & (b).

Both TCC and Hadley have been served with a copy of the complaint. Even so, this is not the sort of notice that would warrant treating Smith and Schwertz's request for injunctive relief as a motion for preliminary injunction. Rule 65(a)'s "notice requirement necessarily requires that the party opposing the preliminary injunction [have] the opportunity to be heard and to present evidence." *Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999). In fact, a party opposing a preliminary injunction should be given the five-days' notice required by Rule 6(c)(1) before a hearing on the motion. *See id*. Thus, the Court will evaluate Smith and Schwertz's complaint as seeking a temporary

2

restraining order without notice to the adverse party under Rule 65(b)(1)(A) and (B).

The complaint, which is verified and requests that a temporary restraining order be entered, was filed on November 3. On November 4 Smith and Schwertz filed their Motion for Temporary Restraining Order (doc. #10). According to the complaint and the motion, this suit was filed after Hadley, on November 1, emailed Smith and informed him that the proposed empty-holster protest would be subject to TCC's regulations and restrictions on student demonstrations. Hadley and TCC were served with the complaint on November 4. Thus, although not specifically discussed in the complaint or the motion, the verified facts in the complaint show that Hadley and TCC have been given notice of Smith and Schwertz's request for injunctive relief, but the timing of the proposed demonstration is such that Hadley and TCC cannot be afforded five days' notice and an opportunity to be heard before Smith and Shwertz will suffer the alleged deprivation of their right to free speech.

To establish Smith and Schwertz's entitlement to a temporary restraining order, the complaint must also "clearly show" that they will suffer "immediate and irreparable injury" without injunctive relief. *See* Fed. R. Civ. P. 65(b)(1)(A). That is, a party seeking an temporary restraining order must demonstrate by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any harm to the

nonmovant that may result from the injunction; and (4) that the injunction will not undermine the public interest.  *See Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572-73 (5th Cir. 1974); *see also Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998); *see also Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) ("The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.") (emphasis added). Injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors."  *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Smith and Schwertz challenge TCC's policy of regulating student speech to free-speech zones and denying them access to areas that have been traditionally considered public forums.  "[A] speaker's right to access government property is determined by the nature of the property or 'forum.'" *Hays County Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992).  According to Smith and Schwertz, TCC has provided a free-speech zone at each of its campuses, regulated access to those zones through a permit system that contains no guidelines or standards for decision-making officials, and denies students access to traditional public forums, such as sidewalks, streets and park areas.  Areas that are traditionally considered public forums do not lose this character merely due to the fact they are on a school campus.  *See Roberts v.*

*Haragan*, 346 F. Supp. 2d 853, 861-73 (N.D. Tex. 2004). And the areas discussed by Smith and Schwertz--streets, sidewalks, and campus common areas--have been held to be public forums. *See Pro-Life Cougars v. Univ. of Houston*, 259 F. Supp. 2d 575, 582 (S.D. Tex. 2003). Thus, TCC's permit system, which is a prior restraint on speech, *see id.* at 583, must withstand strict scrutiny. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001). There is a "heavy presumption" against the validity of such restraints on speech. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). To survive review under the First Amendment, a prior restraint on speech in a traditional public forum must be a content-neutral regulation that is "narrowly tailored to serve a significant government interest and must leave open ample alternative channels of communication." *Hays*, 969 F.2d at 118. And the sort of permit system used by TCC may not delegate overly broad discretion to the official who issues the permits. *See Forsyth County*, 505 U.S. at 130.

Smith and Schwertz allege in their verified complaint that the TCC permit system does not contain sufficient objective criteria for the director of student activities to evaluate a request for a permit. The portions of the TCC regulations submitted by Smith and Schwertz confirm this. TCC's regulations merely state that time, place, and manner restrictions may be imposed, but never detail how the director of student services is to go about evaluating a request for a permit. Such unfettered discretion in imposing prior restraints on speech in public forums violates the First Amendment. *See Kunz v. New York*, 340

5

U.S. 290, 293-95 (1951) (concluding ordinance that required permit to engage in speech activity on public streets violated First Amendment because it did not provide the decisionmaker "appropriate standards to guide his actions"). The only portions of TCC's guidelines that might be understood as standards to be used by the director of student activities in deciding whether to issue a permit refer to the school district's authority to limit speech that "materially and substantially interferes" with either school activities or the rights of other students or teachers. But material and substantial interference is the standard used to evaluate a school's regulation of student speech in the classroom, which, as discussed below, is not a public forum and, therefore, is subject to greater regulation. *Cf. Settle v. Dickson County Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. 1995) ("Where learning is the focus, as in the classroom, student speech may be even more circumscribed than in [a public] forum."). Thus, the Court concludes that Smith and Schwertz have clearly shown a substantial likelihood of success on their claim that TCC's permit system and its related relegation of student speech to designated free-speech zones is an impermissible prior restraint on speech.

This conclusion obtains for the wearing of empty holsters in traditional public forums, as well as speaking and pamphleteering. As argued by Smith and Schwertz, the First Amendment's protection of the right to free speech extends not only to spoken and written words, but also to symbolic speech. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989). Conduct is treated as speech when that conduct is engaged in

with an "intent to convey a particularized message" and "the likelihood [is] great that the message would be understood by those who viewed it." *Id.* When evaluating whether conduct is protected as speech, a court must look to the nature of the particular activity at issue, "combined with the factual context and environment in which it was undertaken." *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001).

Smith and Schwertz certainly intend to convey a particularized message by their wearing of empty holsters--that they oppose Texas law and TCC regulations that prohibit students from possessing concealed handguns on campus, and that such laws leave students unprotected. And there is a great likelihood that the empty holsters will be understood as conveying this message, particularly given the circumstances in which Smith and Schwertz seek to wear them: as part of an organized, nationwide protest in which participants will wear t-shirts depicting empty holsters, discuss their opposition to laws and school regulations prohibiting the possession of concealed weapons on campus, and distribute pamphlets on the issue.

Smith and Schwertz have satisfied the other requirements for securing a temporary restraining order regarding the restrictions on their ability to speak in traditional public forums as well. They have shown that they face a substantial threat of irreparable harm if the injunction is not granted in that they are in the untenable position of forgoing their First Amendment rights or engaging in their desired speech and thereby subjecting themselves to disciplinary

7

action by TCC. *See Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). They have further shown that the threatened injury to them--inability to engage in protected speech or risk disciplinary action--outweighs any potential harm to TCC and Hadley. Smith and Schwertz seek only to engage in a peaceful demonstration in areas traditionally considered public forums. Moreover, they note that several similar demonstrations have taken place on college campuses across the country without incident. Finally, injunctive relief will not undermine the public interest, but will serve it, in that it will be in protection of First Amendment rights without any significant detrimental impact on TCC's objective of educating its students. *Cf. Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (noting that the public interest is undermined by allowing unconstitutional conduct to stand but is served by ensuring a school district acts in accordance with the Constitution).

Smith and Schwertz have not, however, clearly shown a substantial likelihood of success on their First Amendment claims predicated on their inability to wear empty holsters to classrooms. Generally speaking, a classroom is not a public forum. *See Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (concluding school facilities are not public forums unless the school has opened the facilities for use by the public); *see also Bishop v. Aronov*, 926 F.2d 1066, 1071 (11th Cir. 1991) (concluding that classroom is not a public

forum). Smith and Schwertz argue that TCC has designated its classrooms as public forums. They cite portions of TCC's regulations that proclaim the school district's general support of free speech by students. But Smith and Schwertz point to no policy or practice by TCC that clearly shows its intent to designate its classrooms as public forums. Thus, the Court cannot conclude that they have been so designated. *See Cornelius v. NAACP Legal Def. & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.").

As non-public forums, speech within classrooms is subject to reasonable restrictions. *See Kuhlmeir*, 484 U.S. at 267. Speech within a non-public forum may be restricted so long as "the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666, 678 (1998) (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985)) (alteration in *Forbes*). In the Fifth Circuit, a school's viewpoint-neutral restriction on speech in the classroom will be upheld so long as it furthers an important or substantial governmental interest--and that interest is unrelated to the suppression of student expression--and if the incidental restrictions on First Amendment activities are no more than is necessary to facilitate that interest. *See Canady*, 240 F.3d at 441-43 (discussing the various categories of regulations of student speech and the standards applied to each); *but

*see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (discussing restriction on classroom speech that was not viewpoint neutral and stating that such a restriction must be held unconstitutional unless the regulated speech would "materially and substantially interfere with the requirements of appropriate discipline.").

Smith and Schwertz argue that any disruption of classroom activities is too speculative to justify TCC's use of its regulations to prohibit them from wearing holsters to class. This argument assumes that *Tinker* rather than *Canady* provides the standard for evaluating TCC's regulations, even though Smith and Schwertz have not shown those regulations to restrict speech based on the speaker's viewpoint. Assuming *Tinker* applies, it is true that a restriction on student speech may not "be based on the officials' mere expectation that the speech will cause a disruption." *See A.M. ex rel. McAllum v. Cash*, 2009 WL 2324685, at *5 (5th Cir. 2009). But the school's burden to show sufficient interference with education and discipline "is not a difficult burden, and [its] decisions will govern if they are within the range where reasonable minds will differ." *Id.* (quoting *Shanley v. Northeast Indep. Sch. Dist.*, 462 F.2d 960, 970 (5th Cir. 1972) and *Butts v. Dallas Indep. Sch. Dist.*, 436 F.2d 728, 732 (5th Cir. 1971)).

Neither school authorities nor courts are required to review First Amendment issues "in a vacuum or a fantasy world." *Porter v. Ascension Parish Sch. Bd.*, 301 F. Supp. 2d 576, 583 (M.D. La. 2004). Rather, they "must be aware of the events occurring at other schools

to properly protect their students and faculty." *Id.* As noted previously, the wearing of empty holsters may be regarded as symbolic speech largely based on the context of the proposed protests in the public-forum areas of campus. Students will be wearing the holsters, along with t-shirts, while discussing their opposition to handgun regulations and passing out pamphlets on the issue as part of an organized national demonstration. Under these circumstances viewers are likely to understand the wearing of empty holsters as symbolic speech. But having holster-wearing students passing through and participating in classes without the related discussion of the concealed-handgun issues poses such a significant risk of interference with education and order that the Court cannot say that Smith and Schwertz have clearly shown a substantial likelihood of success on this aspect of their claim. Outside of the context of the more formalized demonstrations in which Smith and Schwertz propose to engage in the public-forum areas, students are more likely to associate the holsters with what Smith and Schwertz concede the holsters are in fact associated--the possession of a firearm. This is particularly so given the number of in-classroom shootings in recent years. Such a reaction could clearly conflict with the school's pedagogical objectives; consequently, regulation of speech that would incite that reaction may well be upheld.[1] *Cf. Hazelwood School Dis. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) ("A school need not tolerate

---

[1] This opinion as to likelihood of success on the merits will not control at the hearing on the plaintiffs' motion for preliminary injunction, where both parties will be heard on the holsters-in-the-classroom question.

11

student speech that is inconsistent with its basic educational mission, even though the government could not censor similar speech outside the school.").

Accordingly, the Court GRANTS IN PART Smith and Schwertz's motion for temporary restraining order. However, to the extent that Smith and Schwertz seek to wear empty holsters inside of Tarrant County College District classrooms and their adjacent hallways, their motion is DENIED.

## TEMPORARY RESTRAINING ORDER

It is hereby ORDERED that Erma Johnson Hadley and Tarrant County College District, its officials, employees, and agents, be and they are hereby ENJOINED from prohibiting Clayton Smith, John Schwertz Jr., and any other Tarrant County College District student from wearing empty holsters, wearing t-shirts depicting empty holsters, discussing handgun regulations, and distributing pamphlets on handgun regulation in traditional public-forum areas including, but not limited to, public streets, sidewalks, and common or park areas.

The temporary restraining order granted herein shall become effective upon the giving of security by the plaintiffs in the amount of one thousand dollars ($1,000) in cash and shall expire on November 23, 2009, at 9:00 a.m. unless dissolved by subsequent order or unless extended under Federal Rule of Civil Procedure 65(b)(2).

ISSUED November 6, 2009, at 9:00 a.m.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE