IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLAYTON SMITH, ET AL.           §
                                §
v.                              §   CIVIL ACTION NO. 4:09-CV-658-Y
                                §
TARRANT COUNTY                  §
COLLEGE DISTRICT, ET AL.        §

## ORDER AWARDING ATTORNEYS' FEES

Before the Court are Plaintiffs' motion (doc. 89) and
supplemental motion (doc. 104) for attorneys' fees, costs, and
expenses. Also before the Court are Defendants' objections (doc.
106, 111) to certain evidence relied upon by Plaintiffs in their
supplemental motion for attorneys' fees and in their notice of
recent relevant filings (doc. 110). After review, the Court will
overrule in part and sustain in part Defendants' objections; grant
Plaintiffs' motion for attorneys' fees; and grant in part and deny
in part Plaintiffs' motion for supplemental attorneys' fees.


I.  Background

Plaintiffs Clayton Smith and John Schwertz Jr. filed the
instant lawsuit under 42 U.S.C. § 1983 against Tarrant County
College ("TCC") and its interim chancellor Dr. Erma Hadley in her
official capacity (doc. 1).[1] In their lawsuit, Plaintiffs asserted
that a number of TCC's rules and regulations concerning speech were

---

[1] A more thorough discussion of the facts in this case is contained in the
Court's Opinion and Order of March 15, 2010 (doc. 87) ("Opinion and Order"). In
the instant order, the Court will articulate only the facts necessary to provide
context for the discussion of attorneys' fees, costs, and expenses.

unconstitutional and sought declaratory and injunctive relief. Specifically, Plaintiffs alleged that TCC's rules and regulations violated their right to free speech under the First Amendment to the United States Constitution by denying them the ability to conduct "empty-holster protests"[2] and restricting their other efforts at promoting their cause on campus (e.g., handing out leaflets) to a designated "free-speech zone." Plaintiffs also challenged TCC's requirement that students apply for use of the free-speech zone twenty-four hours in advance as an impermissible prior restraint on speech.

At the outset of the case, Plaintiffs filed a motion for a temporary restraining order to allow them to conduct a protest during November 2009 (doc. 10). This Court granted that motion in part (doc. 14). The Court concluded that the free-speech zone and the permit system amounted to an impermissible prior restraint on speech and that Plaintiffs should be allowed access to conduct their protests in the areas of campus traditionally deemed public forums. However, the Court denied Plaintiffs' motion to the extent

---

[2] Plaintiffs Smith and Schwertz are members of Students for Concealed Carry on Campus ("SCCC"), a national organization created in the wake of the shootings at Virginia Tech. SCCC seeks generally to inform the public about the status of the law on carrying concealed firearms. More specifically, SCCC seeks to have state and college authorities allow students who are licensed to carry a concealed firearm to do so on college campuses. SCCC's members advocate for the repeal or amendment of laws and college rules and regulations that are contrary to this goal. As part of this advocacy, SCCC members engage in "empty-holster protests." In an empty-holster protest, SCCC members wear empty holsters during their normal campus activities to symbolize the fact that they are unarmed and potentially defenseless against a gunman such as the one at Virginia Tech. Op. and Order 1-2.

that it requested permission to conduct the empty-holster protests in the classrooms.

TCC and Hadley then filed motions to dismiss (docs. 16, 21), which the Court denied. In apparent response to the temporary restraining order and the denial of the motions to dismiss, TCC revised its student handbook and policy-regulations manual to dispense with the permit system and the free-speech zone. Following these revisions, Plaintiffs filed an amended complaint alleging that, even after the revisions, TCC's rules and regulations continued to infringe their First Amendment rights. Plaintiffs further alleged in their amended complaint that the revisions were adopted contrary to Texas law and TCC's internal procedures.

The case was tried to the Court on January 13 through 15, 2010. At the conclusion of trial, rather than hear oral arguments, the Court ordered the parties to submit their final arguments by way of briefs. After reviewing those briefs, the Court entered the Opinion and Order. The Court initially concluded that a number of Plaintiffs' challenges to TCC's rules and regulations were not justiciable. The Court ultimately determined, however, that TCC's "disruptive-activities provision,"[3] which applied to deny

_____

[3] The disruptive-activities provision states "[t]he College may initiate disciplinary action against any student involved in disruptive activities. Any activity that interrupts scheduled activities or the process of education may be classified as disruptive." Op. and Order 32. The provision goes on: "[c]onducting an activity which causes College officials to interrupt their scheduled duties to intervene, supervise, or observe activities in the interest

Plaintiffs the ability to wear holsters on campus and to pass out leaflets in class and in the hallways, was unconstitutional as applied to Plaintiffs and that TCC's "cosponsorship provision,"[4] which prohibited students from engaging in speech on campus that was cosponsored by a non-student or off-campus organization, was overly broad and, thus, unconstitutional on its face.

Accordingly, the Court permanently enjoined TCC, Hadley, and its officials, employees, and agents from prohibiting Smith, Schwertz, and any other TCC student from wearing empty holsters in TCC's classrooms, on the TCC campuses' streets and sidewalks, and in the TCC campuses' outdoor common areas, such as lawns and

---

of maintaining order at the College" will be considered disruptive activity. *Id.*

[4] The cosponsorship provision states, in relevant part, as follows:

(a) Neither registered student, faculty/staff organizations, nor individual students or faculty/staff members, may cosponsor any event on campus with an off-campus person or organization. Only academic or administrative units with authority delegated from the Chancellor of the College District may cosponsor events with an off-campus person or organization.

(b) An event is a prohibited cosponsorship if an individual or student or faculty/staff organization:
    (1) depends on an off-campus person or organization for planning, staffing, or management of the event; or
    (2) advertises the event as cosponsored by an offcampus person or organization; or
    (3) operates the event as an agent of, of for the benefit of, an off-campus person or organization, except for solicitation of charitable contributions; or
    (4) reserves a room or space for the use of an offcampus person or organization; or
    (5) engages in any other behavior that persuades the vice president for student development services that an off-campus person or organization is in fact responsible for the event, in full or in substantial part.

Op. and Order 48-49.

plazas.  The Court also permanently enjoined TCC from enforcing the cosponsorship provision of the student handbook to prohibit student speech on the campus streets or sidewalks, or in the campus common areas, such as lawns and plazas.  Because Plaintiffs had requested attorneys' fees, the Opinion and Order required that Plaintiffs submit a brief, pursuant to Federal Rule of Civil Procedure 54(d)(2), setting forth the legal authority by which the Court may award attorneys' fees in this case, establishing the amount of fees requested, and discussing the reasonableness of the amount of fees requested under the "lodestar" analysis and the factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989).

Pursuant to that order, Plaintiffs submitted their motion for attorneys' fees on March 29, 2010 (doc. 89), requesting $195,730.00 in attorneys' fees based on an hourly rate of $250 an hour per attorney, and $6,457.02 in expenses.  In support, Plaintiffs filed a three-volume appendix containing the declarations of attorneys David Broiles, Karin Cagle, and Lisa Graybill and documenting the hours expended, the bases for the attorneys' hourly rates, and the bases for the costs and expenses they incurred for each attorney (docs. 90-92).  Defendants filed a response on April 19 (doc. 96), conceding that Plaintiffs were the "prevailing party" and thus entitled to recover attorneys' fees, but contending that the amount

of Plaintiffs' request is excessive. Plaintiffs filed a reply on May 3 (doc. 100), along with an additional three-volume appendix.

On May 5, Plaintiffs filed a supplemental motion for attorneys' fees, costs, and expenses (doc. 104). In that motion, Plaintiffs explain that the $250 hourly rate that formed the basis of their initial fee request is well below the market rate and was proposed in the hope of avoiding a fee-rate dispute. Plaintiffs indicate that, because the fee-rate is contested, they now seek an award based on higher hourly rates, which they insist reflect the relevant market rates. Plaintiffs further assert that they should receive additional fees for the work required to reply to Defendants' rather extensive challenge to its March 29 motion.

On May 7, Defendants filed objections (doc. 106) to certain evidence that Plaintiffs relied upon in their supplemental motion. Plaintiffs responded to those objections on May 16 (doc. 107). Then on July 14, Plaintiffs filed a notice of two recent cases from the United States District Court for the Northern District of Texas that they offered as relevant to the issues in this case (doc. 110). Defendants objected to this as well (doc. 111) on grounds of relevance. Plaintiffs responded to this objection on August 1 (doc. 112).

II. Analysis

    A. Defendants' Objections

Defendants make three primary objections to the evidence relied upon by Plaintiffs in their supplemental motion for attorneys' fees and in their notice of recent relevant filings. First, Defendants object to the Court's consideration of the declarations of Jim Cowles, James Renard, Dunham Biles, Jack Ternan, and Frank Finn on the grounds that each declarant gave expert testimony on the issue of attorneys' fees without being timely designated as an expert and that each declaration is irrelevant. Second, Defendants object to the consideration of Defendants' liability-insurance policy, asserting that the policy is not a proper consideration in an attorneys' fee dispute. Third, Defendants object to the cases contained in Plaintiffs' notice of recent relevant filings on the grounds that the cases submitted are irrelevant.

After consideration of Defendants' first objection, the Court concludes that the Cowles, Renard, Biles, and Finn declarations each contain opinion testimony that, in order to be admissible, must be given by a designated expert. However, each declaration also contains factual testimony based on the declarant's personal knowledge (e.g., the rates that the attorney, himself, typically charges). Rather than strike the declarations in their entirety, the Court will consider only the relevant factual testimony and exclude from its consideration the opinion testimony found within the declarations. While the Court agrees with Plaintiffs that a

late designation of attorneys' fees experts is typically not as problematic as a late designation of experts testifying to the merits of the case, the attorneys' fee briefing in this case has been extensive and Plaintiffs' two, three-volume appendices contain sufficient evidence on the issue of reasonable fee rates even without the expert testimony. Noting that "[a] request for attorney's fees should not result in a second major litigation," the Court will not grant Plaintiffs leave to designate the declarants as experts. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Additionally, the Court finds that the Ternan declaration adds no probative value in the evaluation Plaintiffs' request for fees and, therefore, excludes the declaration as irrelevant. Accordingly, the Court SUSTAINS Defendants' first objection in part and OVERRULES it in part.

Defendants' second objection is without merit. Plaintiffs have offered Defendants' liability-insurance policy merely to rebut Defendants' assertion that "Plaintiffs should not be compensated from public revenues." Defs.' Resp. Br. 2. Plaintiffs have not offered it as evidence of Defendants' liability, which would be prohibited by Federal Rule of Evidence 411. See Fed. R. Evid. 411. Thus, Defendants second objection is OVERRULED.

Finally, Defendants' objection to the relevance of the cases contained in Plaintiffs notice of recent relevant filings is also without merit. The cases to which Plaintiffs have directed the

Court's attention each contain a thorough and informative analysis of attorney's fee requests in the United States District Court for the Northern District of Texas. They are, therefore, relevant to the instant case, and Defendants' third objection is OVERRULED.

### B. Plaintiffs' Motion and Supplemental Motion

#### 1. Prevailing-Party Status

Under 42 U.S.C. § 1988(b), the Court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." There are three prerequisites to obtaining "prevailing-party" status: the plaintiff must "(1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citations omitted) (internal quotation marks omitted).

Plaintiffs, without question, were the prevailing party in this case. Indeed, Defendants have conceded as much. At the outset of the litigation, Plaintiffs obtained a temporary

restraining order granting them the ability to conduct protests in the traditionally public areas of campus. And ultimately, Plaintiffs obtained two permanent injunctions, one enjoining Defendants from prohibiting students from wearing empty holsters on campus and the other enjoining Defendants from enforcing the cosponsorship provision of the student handbook to prohibit student speech on campus. The focus of this order, then, is not on whether Plaintiffs are entitled to recover attorneys' fees, but on what amount of fees is appropriate.

### 2. Reasonableness of Amount

In arriving at a reasonable amount of attorneys' fees, courts in the Fifth Circuit use the "lodestar" method. *See* 42 U.S.C.A. § 1988(b) (West 2010); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). This process has two steps: (1) calculation of the lodestar and (2) adjustment, if any, of the lodestar. *Id.* To calculate the lodestar, the Court "must [first] determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The Court "must [then] multiply the reasonable hours by the reasonable hourly rates." *Id.*

Once the Court has calculated the lodestar, it either accepts the lodestar or adjusts it upward or downward, "depending on the circumstances of the case." *Id.* When determining whether to

10

adjust the lodestar, the Court should consider the *Johnson* factors,[5] the most critical of which is "the degree of success obtained." *Migis*, 135 F.3d at 1047 (citing *Farrar*, 506 U.S. at 114). The Lodestar is presumptively reasonable and should not be adjusted except where necessary to make the fee award reasonable. *See Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993); *see also Nassar v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:08-CV-1337-B, 2010 WL 3000877, at *2 (N.D. Tex. July 27, 2010) (citing *Watkins*, 7 F.3d at 459).

a. Hours Expended

In their motion, Plaintiffs contend that seven attorneys, collectively, spent 1,044.06 hours working on Plaintiffs' case.[6] Their brief indicates that their work in this case included the following:

> conducting pre-suit investigation and analysis of relevant facts and law, including TCC's existing policies and past practices on campus expression; researching and preparing pleadings including the complaint, motion for

---

[5] The *Johnson* factors consist of the following:

(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Migis*, 135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717-19).

[6] Plaintiff also requests 11.8 hours in travel time. Defendants do not appear to challenge this request.

> temporary restraining order and memorandum in support,
> appendices in support of the [temporary restraining
> order], motion for summary judgment, responses to five
> motions filed by [D]efendants, amended complaint, trial
> amendment and closing argument brief; preparing for and
> attending a telephone hearing before [U.S. District]
> Judge [John H.] McBryde prior to his recusal; responding
> to [D]efendants' discovery requests; preparing for and
> attending depositions for plaintiff Smith and attorney
> [David] Broiles; reviewing and analyzing [D]efendants'
> pretrial revisions to their policies; developing trial
> strategy and preparing witnesses for trial; conducting a
> three-day trial; and preparing this fee petition.

Pls.' Mem. Supp. Mot. Att'y Fees 12. Plaintiffs document these hours in significant detail in the three-volume appendix accompanying the motion. *See* Pls.' App. Vols. 5-7.

Plaintiffs also explain that they omitted from their fee request 258.49 of the aforementioned hours worked, based on their billing judgment that those hours were potentially "duplicative, excessive, or otherwise non-compensable." *Id.* at 13. These omissions include the work of two associates at Kirkley & Berryman, L.L.P. ("Kirkley & Berryman"), and a paralegal and legal assistant at the American Civil Liberties Union ("ACLU"). *Id.; see also* Pls.' App. Vol. 6, at 9. In Plaintiffs' supplemental motion for attorneys' fees, Plaintiffs submit to the Court a request for an additional 129.92 hours for time they spent replying to Defendants' response and objections. Thus, the total amount of hours included in Plaintiffs' fee request is 903.99 hours.

"The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a

benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. The hours surviving this vetting process are those reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5 Cir. 1993) (citations omitted).

Defendants contend that the number of hours Plaintiffs have claimed in this case is excessive. Defendants characterize a number of Plaintiffs' challenges as unsuccessful and assert that the hours spent on those challenges should be deducted from the hours included in Plaintiffs' fee award. Defendants, for example, characterize as unsuccessful all of Plaintiffs' challenges that the Court determined not to be justiciable. Defendants also deem unsuccessful Plaintiffs' challenges under Texas law to TCC's adoption and promulgation of its revisions to the handbook and policy-regulations manual. Defendants further assert that Plaintiffs' contentions that TCC's restrictions on student speech were content-based were unsuccessful because the Court found that Plaintiffs had presented no evidence that the rules and regulations had been applied differently to them than to other speakers with other messages.

Much of what Defendants refer to as "non-prevailing claims," however, are not separate claims at all; rather, they are contentions that, although not necessarily accepted by the Court, were raised in support of claims on which the Plaintiffs'

ultimately prevailed. For example, Defendants argue that the hours Plaintiffs spent working on their challenge to the disruptive-activities provision of the student handbook should be deducted from Plaintiffs' fee award because the Court did not accept Plaintiffs' contention that the provision was unconstitutional on its face. Yet, ultimately, the Court concluded that the provision was unconstitutional as applied to Plaintiffs and entered a permanent injunction prohibiting TCC and its agents from preventing Plaintiffs and other students from wearing empty holsters in TCC's classrooms. As the United States Supreme Court stated in *Hensley v. Eckerhart*,

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

461 U.S. 424, 435 (1983).

Plaintiffs challenged TCC's rules and regulations concerning speech on a number of legal grounds and, ultimately, Plaintiffs obtained the bulk of the relief they sought, including a court order enjoining TCC from prohibiting Plaintiffs' protests on campus. While the Court did not accept each and every contention

raised by Plaintiffs, the Court granted favorable relief to Plaintiffs based on the claims in support of which these contentions were raised. The time Plaintiffs spent studying TCC's rules and regulations, researching the applicable law, formulating their arguments, and drafting their pleadings and motions is simply not readily severable into categories of "successful" and "unsuccessful," given the relief that Plaintiffs obtained as a result of this work.

Defendants also contend, however, that Plaintiffs' fee request should be reduced by the time Broiles spent as an expert in this case. As Defendants point out in their response, Broiles did not make an appearance as counsel for Plaintiffs in this case until January 2010, when the plaintiffs decided not to call Broiles as an expert. This decision came after the Court's order of December 22, 2009 (doc. 42), in which the Court indicated that Broiles would likely not be permitted to serve as a fact or expert witness in this case because his contributions to the case largely involved legal conclusions and his knowledge of the facts giving rise to this case was not first hand.

However, while Broiles indicates in his declaration that he began this case merely intending to serve as a consulting attorney and possibly an expert witness, his role changed because the complexity and time demands of the case increased beyond what Plaintiffs initially anticipated. Pls.' App. Vol. 5, at 2-3. Even

prior to January 2010, Broiles helped Plaintiffs' counsel complete a number of legal tasks, such as drafting the complaint and preparing and responding to discovery, although he states he did not intend to act as an advocate throughout this period. *Id.* at 2-3.

Broiles's declaration sets out in significant detail the work he contributed to this case and his role at each juncture of the proceedings. *Id.* at 1-18. It also indicates that Broiles did not keep time records from October 24, 2009, to December 22, 2009. Rather, Broiles states that a Kirkley & Berryman paralegal with whom he worked recorded her activities in detail and that he was able to estimate his time during those periods based largely upon her records. Broiles indicates in his declaration that he made significant reductions in the hours he submitted with his fee request because of his changing roles in the case, the fact that he had no office billing system, and his status as a retiree. Pls.' App. Vol. 5, at 6. Specifically, according to Plaintiffs' reply brief, Broiles deducted ninety-five hours from his fee request.

Despite this evidence, Defendants assert that Broiles's contributions to the case prior to January 7, 2010, should be completely eliminated from the fee award. The Court disagrees. While, as previously mentioned, Broiles did not detail his hours in the same manner he would have had he anticipated serving as an advocate from the outset, it is clear from the evidence in this

case that he made significant legal contributions to Plaintiffs'
case during that time and, ultimately, was not called to serve as
a witness in this case at trial. His declaration, signed under
penalty of perjury, contains an adequate explanation of his work at
each juncture of the proceedings to enable him to recover for his
work during that period. Moreover, the declaration anticipates the
need for a reduction based on his unusual time-keeping. The
reliability of this reduction is supported by Broiles's letter of
March 26, 2010, in which Broiles explains to Cagle, with respect to
his time from January 30 to March 30, "[t]he hours I spent ended up
being far in excess of the number that should be compensated."
Pls.' App. Vol. 5, at 30 (Ex. DB-3). The Court is satisfied that
the amount of time Broiles has submitted as part of Plaintiffs' fee
request is reasonable and adequately accounts for the necessary
hourly reductions.

Therefore, based on the extensive appendix documenting the
hours Plaintiffs' attorneys spent working on this case and the
reductions they have detailed, the Court concludes that the total
number of hours that Plaintiffs have submitted, 903.99 hours,[7] is
reasonable.

   b.  Hourly Rate

In their motion for attorneys' fees, Plaintiffs request fees

_____

   [7] The breakdown is as follows: 324 net hours for Broiles; 125.18 net hours
for Graybill; 108.41 net hours for Fleming Terrell; 342.9 net hours for Cagle;
and 3.5 net hours for associate Sean Looney.

at a rate of $250 an hour per attorney.[8]  According to Plaintiffs, this amount is well below the relevant market rate and was requested in an effort to avoid a fee dispute.  Defendants, however, contest this amount as it applies to Cagle, asserting that, based on the size of the firm where Cagle is employed and her level of experience, Cagle's hourly rate should be between the range of $150 to $175 per hour.  Defendants base this assertion on the averages contained in a 2005 report prepared by the State Bar of Texas.  In their reply, Plaintiffs contend that Defendants' proposed hourly rate for Cagle is incorrect because it reflects the average hourly rates of attorneys at firms with six to ten attorneys, whereas Cagle works at a five-person firm, which yields a higher average hourly rate of $225 per hour.  Moreover, Plaintiffs contend the 2005 report is no longer accurate because of inflation and increases in the relevant market rates.

In their supplemental motion for attorneys' fees, Plaintiffs indicate that, because the $250 rate did not achieve its objective in avoiding a fee controversy and because Defendants insist on Plaintiffs' charging the relevant market rate, they would like the Court to award higher rates to reflect the relevant market.[9]

---

[8] Plaintiffs only request $187.5 per hour for the 11.8 hours in travel time.

[9]  The rates that Plaintiffs now seek for each attorney are as follows: $400 an hour for Broiles; $400 an hour for Graybill; $300 an hour for Terrell; $250 an hour for Cagle (except for 9.2 hours with respect to which Plaintiffs'

"The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the one in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Plaintiffs have supported their motion for attorneys' fees and their supplemental motion with ample documentation of the relevant market's hourly rate for attorneys of comparable experience, positions, and firm-sizes in the Dallas/Fort Worth area.

After review of Plaintiffs' evidence, the Court concludes that $250 an hour is well within the market rate for most of Plaintiffs' attorneys and is reasonable. The Court further concludes that the higher rates requested by Plaintiffs in their supplemental motion are also consistent with the market rates in Dallas/Fort Worth and, thus, reasonable. These conclusions are based on the three-volume appendix accompanying Plaintiffs' initial motion for attorneys' fees, which the Court notes was filed before the fee dispute arose and before Plaintiffs requested the higher amounts.

Thus, for the hours worked prior to March 29, 2010, the Court will use the $250 rate in its lodestar calculation. Plaintiffs considered this amount adequate at the time they initially

---

seek only $125 an hour); and $250 an hour for Looney.

requested it, and that has not changed simply because Defendants have contested its reasonableness. However, for the time spent replying to Defendants' response, March 29 to May 4, the Court will use the higher market rates to calculate the lodestar, as the Court is persuaded that these amounts are reasonable.

### c. Adjustment of the Lodestar

The Court sees no reason to adjust the lodestar. As previously mentioned, the lodestar is presumptively reasonable and should only be adjusted where necessary to make the fee award reasonable. *See Watkins*, 7 F.3d at 459. Review of the *Johnson* factors in this case counsels in favor of leaving the lodestar unadjusted. Plaintiffs' counsel obtained excellent results in this case, obtaining virtually all of the relief that Plaintiffs' requested. *See Migis*,135 F.3d at 1047 (citing *Johnson*, 488 F.2d at 717-19). Further, the time and labor involved in this case was rather extensive, given the nature of the causes of action. *See id*. Plaintiffs' counsel spent substantial amounts of time studying Defendants' rules and regulations and then had to revisit the regulations after Defendants revised them. Therefore, given that the Court has already addressed Defendants' strongest arguments for reducing Plaintiffs' fee award in the Court's calculation of the lodestar, the Court concludes after review of the *Johnson* factors that adjustment of the lodestar is inappropriate.

### 3. Expenses and Costs

Plaintiffs also seek to recover $7,114 in expenses and Westlaw charges. Plaintiffs support their requests with entries explaining the components of the expense calculation. Pls.' App. Vol. 7, at 202-254.

Defendants challenge Plaintiffs' request for recovery of Westlaw expenses on the basis that research charges are not properly recoverable as costs. However, the case that Defendants cite in support is a case involving costs under 28 U.S.C. § 1920. *See Embotelladora Agral Regiomontana v. Sharp Capital, Inc.*, 952 F. Supp. 415, 418 (N.D. Tex. 1997). As Plaintiffs properly point out in their reply, 42 U.S.C. § 1988 provides a separate basis for recovery of costs and expenses. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395-96 (5th Cir. 2003). Under § 1988, reasonable out-of-pocket expenses are "plainly recoverable" if they are of the type normally charged to fee-paying clients. *See id*. at 396 (quoting *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)). Such expenses may include reasonable Westlaw charges. *See, e.g., Shepherd v. Dallas Cnty.*, No. 3:05-CV-1442-D, 2009 WL 977295, at *16 (N.D. Tex. Jan. 22, 2009). With this in mind, the Court concludes that Plaintiffs' request for expenses is reasonable.

III. Conclusion

Accordingly, Plaintiffs' motion for attorneys' fees, costs,

and expenses is GRANTED and Plaintiffs' supplemental motion for attorneys' fees, costs, and expenses is GRANTED in part and DENIED in part. Plaintiffs may recover $236,329[10] in attorneys' fees, with $88,500 going to Broiles; $62,379 going to the ACLU; and $85,450 going to Kirkley & Berryman. Plaintiffs may also recover $7,114 in expenses, with $1,016.77 going to the ACLU and $6,097.23 going to Kirkley & Berryman.

SIGNED October 13, 2010.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[10] Prior to March 29:
Travel time (ACLU) – 11.8 hours x $187.5 rate = $2,212.50
All Attorneys' work time – 774.07 hours x $250 rate = $193,517.50
Broiles – 274 hours x $250 rate = $68,500
Graybill (ACLU) – 119.75 hours x $250 rate = $29,937.50
Terrell (ACLU) – 89.32 hours x $250 rate = $22,330
Cagle (K&B) 291 hours x $250 rate = $72,750
After March 29:
Broiles – 50 hours x $400 rate = $20,000
Graybill (ACLU) – 5.43 hours x $400 rate = $2,172
Terrell (ACLU) – 19.09 hours x $300 rate = $5,727
Cagle (K&B) – (42.7 hours x $250 rate) + (9.2 x $125) = $11,825
Looney (K&B) – 3.5 hours x $250 rate = $875

22